507 A.2d 1304

McGraw Edison Company, Petitioner *v.* Workmen's Compensation Appeal Board (Buechel, Jr.), Respondents.

Submitted on briefs February 7, 1986, to Judges MacPhail and Colins, and Senior Judge Blatt, sitting as a panel of three.

*Carl J. Smith, Jr., Stephen I. Richman & Partners,* for petitioner.

*Leonard P. Kane, Jr., Fried, Kane, Walters & Zuschlag,* for respondent, Adam Buechel, Jr.

OPINION BY JUDGE MACPHAIL, April 23, 1986:

The McGraw-Edison Company (Employer) appeals from a decision by the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision to reinstate a Notice of Compensation Payable to Adam Buechel, Jr. (Claimant). We affirm.

On October 21, 1978, Claimant suffered a compensable injury in the course of his employment as a tube barrier with Employer when his left hand got caught between the two rollers of the machine he was operating. The injury required extensive surgery, including skin grafts. Pursuant to a Notice of Compensation Payable dated November 27, 1978, Claimant received compensation for his injured left hand at a weekly disability rate of $205.22. Six supplemental agreements were subsequently entered into, either suspending compensation when Claimant returned to light duty work with no loss of earning power or reinstating compensation at the rate of $205.22 per week when Claimant's total disability recurred. A corrected supplemental agreement dated May 28, 1980 (correcting a May 22, 1979 supplemental agreement) stated that Claimant no longer received compensation as of November 14, 1979, because Claimant returned to work with no loss of earning power.

On or about May 7, 1980, Claimant filed a petition for reinstatement of compensation benefits alleging that he had sustained certain specific losses as a result of the October 21, 1978 work-related injury. This petition was treated by the referee as a petition for reinstatement. Following a hearing, the referee found, based on his own observations of Claimant's left hand and the deposition and written report of Dr. Norman Minde, that

Claimant suffered the permanent loss of use of the left hand for all practical intents and purposes. The referee set aside the May 22, 1979 supplemental agreement and reinstated the original notice of compensation payable.

Employer appealed the referee's decision to the Board, alleging that the referee erred in finding that Claimant suffered the loss of use of his left hand for all practical intents and purposes. Specifically, employer contended that the medical testimony of Dr. Norman Minde was incompetent and incredible because Dr. Minde's deposition finding loss of use of Claimant's left hand differed from his prior report which found only a 50% permanent loss of the left hand without an adequate basis in fact. The Board determined that the deposition was merely a clarification of his earlier report and found Dr. Minde's testimony competent. The Board also noted that the referee observed Claimant's hand and relied on his own observations as well as Dr. Minde's medical opinion in finding loss of use of the hand for all practical intents and purposes. The Board affirmed the referee and this appeal followed.

The issue of the loss of use of an extremity is a question of fact for the referee to resolve. *Klaric v. Workmen's Compensation Appeal Board, (National Castings, Div. Midland Ross Corp.)* 71 Pa. Commonwealth Ct. 91, 455 A.2d 217 (1983). The party seeking to establish a specific loss is required to show that Claimant has suffered the permanent loss of use of the injured part of his body. *Id.* The injured body part need not be of absolutely no use in order to qualify for specific loss benefits. *Id.* Where the party with the burden of proof prevailed before the referee and the Board did not receive additional evidence, as here, we need only determine whether constitutional rights were violated, an error of law was committed or necessary findings of fact

were not supported by substantial evidence. *United States Steel Corporation v. Workmen's Compensation Appeal Board,* 59 Pa. Commonwealth Ct. 434, 430 A.2d 349 (1981).

Employer argues that the referee's findings were not supported by substantial evidence because Dr. Minde's testimony was incompetent to show that Claimant suffered the loss of use of his left hand. Dr. Minde examined Claimant on May 7, 1980. In his report, also dated May 7, 1980, Dr. Minde concluded:

> At the present time he shows excellent results with surgery but he has some permanent findings which will probably get worse with time. He [sic] is noted that he is losing some of the strength and some of the motion in the left hand. Certainly these findings constitute *half the loss of use of the left hand and wrist.* It is likely that with further time and he gets older it will be farther [sic] decrease in the use of the hand and wrist. He must be very diligent and exercise to keep this from happening. (Emphasis added.)

On May 13, 1981, although he did not examine Claimant again, Dr. Minde updated his May 7, 1980 findings and stated in a letter to Claimant's counsel that "[i]n an effort to come to a realistic appraisal of this man, I must state that he has definite findings of loss of use. In my opinion, this can be established as for all practical intents and purposes as the loss of use of the left hand." When Dr. Minde was deposed on October 2, 1981, the following exchange took place on cross-examination:

> Q: Doctor, after your first examination of Mr. Buechel—your only examination of Mr. Buechel—you indicated that your findings would constitute half the loss of use of the left hand and wrist; is that still your opinion?

A: Yes, sir, we had to try to give you say a description of overall problems. I say that he has, you know, the problems of both the hand and the wrist, but taking into account everything and trying to get down to a specific item, then I stated that it would be, for all intents and purposes, the loss of use of the left hand.

Q: Well, in refining your opinion in your subsequent report, you deleted your reference to the wrist?

A: Yes, I tried to look at this thing in terms of a specific loss, and this is what I felt was the specific loss—the hand.

Q: Is that the only change between your—

A: Yes, I mean that's the only difference I mentioned to try to get specific as far as the loss was concerned. That's why I stated it was the specific loss of use of the hand. He obviously—it's more than that because of the problems remaining in the wrist and the rest of the forearm.

Q: Well, Doctor, do you still consider it half the loss of use of the hand?

A: No, no, I said he has—Initially, I stated that he had half the loss of use of the hand and wrist, but to try to get more specific than that, he has a loss of use of a hand. I am trying to give a specific loss, and as far as I am concerned, it's the loss of use of the hand. I am trying to refine this into something that can be utilized better.

. . . .

Q: Now, for what reason did you issue or write the subsequent report dated May 13, 1981?

A: Well, with the findings that were present, including the problems with the wrist

too, this added to the problems with the hand. So in trying to refine it into one area, it was my opinion that he had the specific loss of use of the left hand.

Q: Did you receive any additional information between the time of your examination on May 7 [, 1980] and the letter of May 13, 1981?

A: No.

Q: Were you requested to clarify your findings by Mr. Buechel or someone representing Mr. Buechel?

A: I was asked if there was any specific loss, and that's why I stated that there had been a specific loss of the left hand.

Q: Well, Doctor, hadn't you, in effect, already stated that there had been a specific loss of half of the left hand in your original report?

A: I had given an approximate idea of what was present when I saw the man that he had half the loss of use of the hand and wrist. In trying to refine this into something that is definite—more definite than that, I decided to, based on findings, based on history, based on records, that he had the loss of use of the left hand.

(Deposition of Dr. Norman Minde, dated October 21, 1981 at 27-29).

It is Employer's position that inasmuch as Dr. Minde did not receive any additional information, his deposition testimony lacked an adequate basis in fact for the "change" in opinion. *See Sears, Roebuck & Co. v. Workmen's Compensation Appeal Board,* 48 Pa. Commonwealth Ct. 161, 409 A.2d 486 (1979). We stated in *Sears, Roebuck & Co.* that:

A change in a diagnosis made or opinion held by a qualified physician from one held earlier in a patient's history would go only to the weight to

be accorded the current opinion. It simply amounts to a withdrawal of the earlier opinion, which does not make the current opinion incredible as a matter of law, as long as the current opinion has an adequate basis in fact, Compare, Brannon v. Laukenau Hospital, 254 Pa. Superior Ct. 352, 356, 385 A.2d 1376, 1379-82 (1978) with Workmen's Compensation Appeal Board v. Gimbel Brothers, 19 Pa. Commonwealth Ct. 176, 338 A.2d 755 (1975); and 'it is the function of the referee, not that of appellate courts, to determine the credibility of, and weight to be given to, the testimony of medical experts.' Columbus Service International v. Workmen's Compensation Appeal Board, 17 Pa. Commonwealth Ct. 441, 445, 333 A.2d 233, 236 (1975).

48 Pa. Commonwealth Ct. at 169-170, 409 A.2d at 490. We do not believe that Dr. Minde's testimony is necessarily inconsistent with his prior report: Dr. Minde made clear that his diagnosis of a specific loss was merely a clarification of his prior report, and the referee chose to accept this testimony as credible. Moreover, even if Dr. Minde's deposition testimony could be characterized as a change of medical opinion, he based that change on his original examination of the Claimant and his findings with respect thereto. Keeping in mind that it is the referee's function to assess credibility and the weight to be given a medical witness' testimony, we believe that it was within the referee's prerogative to find Dr. Minde's testimony credible. This testimony, coupled with the referee's personal observation of Claimant's left hand, constitutes substantial evidence to support the referee's findings. *See McGartland v. Ampco-Pittsburgh Corp.*, 489 Pa. 205, 413 A.2d 1086 (1980). The fact that Employer's medical witnesses testified to the contrary does not render Dr. Minde's testimony incompetent.

502

We affirm the Board.

### ORDER

The order of the Workmen's Compensation Appeal Board dated July 19, 1984, at No. A-84760, is hereby affirmed.